IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 29, 2017 Session

## MIKE BREEN, ET AL. V. JANICE C. SHARP

**Appeal from the Chancery Court for Stewart County**
**No. CH-14-CV-74      David D. Wolfe, Chancellor**

_____

### No. M2016-02415-COA-R3-CV

_____

This appeal arises from an action for partition of undeveloped real property located in Stewart County, Tennessee. The property consists of three non-contiguous tracts and is owned by three people — two brothers and their aunt. The brothers ("Plaintiffs") seek partition of all of the property by sale. Their aunt ("Defendant") seeks partition in kind. Pursuant to an agreed order of reference, the trial court referred the case to a special master to determine the ownership interests of the parties, whether the property could be partitioned in kind, and whether there were any encumbrances. Prior to the completion of the master's report, Defendant filed a motion for summary judgment. The court delayed ruling on the motion until after the master's report was completed. Thereafter, the special master filed a report in which he found that Defendant owned a one-half undivided interest, and each Plaintiff owned an undivided one-fourth interest. The master also concluded that the overall value of the property would be reduced if the property was partitioned in kind among the three parties. Defendant filed eight exceptions to the report. After reviewing the report and evidence presented at the master's hearing, the trial court concurred with all but one of the master's findings. As for that one issue, the court ordered a partial partition in kind of one tract, awarded that parcel to Defendant, and ordered her to pay $195,948 to Plaintiffs for the value of that parcel. The remaining property was to be sold with the proceeds divided according to the parties' respective interests. The court also denied Defendant's motion for summary judgment. Defendant appeals, contending the trial court erred by (1) delaying its ruling on her summary judgment motion; (2) determining that Plaintiffs each owned an undivided one-fourth interest; (3) ruling that the entire property could not be partitioned in kind; and (4) valuing the parcel awarded to her in kind based on incompetent evidence. We affirm the trial court on all issues except for the value assigned to the parcel awarded to Defendant, and modify the judgment in that respect only.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part and Modified in Part**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which RICHARD R. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Janice C. Sharp.

Larry B. Watson, Clarksville, Tennessee, for the appellees, Travis Breen and Caleb Breen.

**OPINION**

This case involves an action for partition of approximately 238 acres of undeveloped real property located in Stewart County, Tennessee. Two tracts are fronted by Melton Springs Road, with one tract lying to the north of Melton Springs Road (Tract 1) and the other to the south (Tract 2). The third tract is located several miles away in an area known as Saline Creek (Tract 3).

The parties to this action acquired the property from the Doxie W. Crutcher Revocable Trust ("the Trust") pursuant to the terms of the trust following the death of Ms. Crutcher in January 2012. The Trust provided that upon Ms. Crutcher's death "the Trustee shall divide my Residuary Trust Estate into two equal shares. The Trustee shall distribute one share to my daughter Janice C. Sharp, free of trust; and shall distribute one-half share to my grandson Caleb Breen and one-half share to my grandson Travis Breen, free of trust." It also provided that in the event Travis Breen had not attained the age of twenty-six at the time of Ms. Crutcher's death, the shares of Caleb and Travis Breen would be held in trust by their father, Mike Breen, until Travis Breen attained the age of twenty-six. Following Ms. Crutcher's death, the property was conveyed pursuant to the terms of the Trust.

On July 24, 2014, Mike Breen, acting in his capacity as Trustee of his sons' shares, commenced this action for partition, requesting that the property be sold and that the proceeds be divided according to the parties' interests. The defendant, Janice C. Sharp ("Ms. Sharp") filed an answer contending that the property was capable of being partitioned in kind or partially partitioned in kind. Specifically, and for sentimental reasons, Ms. Sharp wanted to be awarded the western half of Tract 2, because it contained an old school house where her grandmother taught and her mother attended.

On January 16, 2015, the parties entered into an agreed order to refer the case to the special clerk and master. It stated:

> The Petition in this cause seeks to sell for partition, but not all facts sufficiently appearing, it is hereby ORDERED that the cause be referred to the Clerk and Master, Jane Link, as Master and Special Commissioner, and that the Master take proof and report back to the Court for following:

1. Who are the owners of the premises sought to be sold, and the respective rights, titles, and interest of the parties, and what share or part belongs to each.

2. Are the premises so situated that partition in kind cannot be equitably made, or whether they are of such description that it would be manifestly for the advantage of the parties that the same should be sold, instead of partitioned.

3. Whether there are any encumbrances on the premises not disclosed in the pleadings; and if so, what, and to whom belonging.

Approximately one month later, Ms. Sharp filed a motion for summary judgment. Thereafter, Travis Breen reached the age of twenty-six, and he and his brother, Caleb, were substituted as plaintiffs. The plaintiffs, Travis and Caleb Breen (collectively, "Plaintiffs") then filed a response in opposition to the motion. The court determined that Ms. Sharp's motion was "premature," because the special master had not yet investigated the facts and reported to the court on the issues. Consequently, the court declined to rule at that time.

After the parties presented evidence at a hearing on November 23, 2015, the special master made several findings. We summarize those findings as follows:

1. Ms. Sharp owned an undivided one-half interest in the property, and Travis and Caleb Breen each owned an undivided one-fourth interest.
2. The property was unencumbered.
3. The fact that Travis and Caleb Breen each owned an undivided one-fourth interest would make an in kind division more problematic.
4. Tracts 1 and 2 varied significantly in topography, consisting of flat to rolling pastures and deep hollows. The topography would make it "virtually impossible to partition the property in kind so as to give each cotenant an equal share by value and acreage."
5. Tract 3 (Saline Creek property) had limited access which would make partition in kind relative to each co-tenant's interest impossible.
6. No in kind division proposed by the parties gave them equal road frontage. The western half of Tract 2 (the tract desired by Ms. Sharp) was the most valuable tract.
7. If the three tracts were divided into six tracts of equal acreage, as Ms. Sharp proposed, the overall value would be reduced.

Thus, the clerk and master concluded that a partition in kind was impossible, and that it would be "manifestly for the advantage of the parties" if the property was sold as three

separate tracts, with the proceeds divided in accordance with the parties' relative interests.

Ms. Sharp filed eight exceptions to the clerk and master's report. After considering each exception, the trial court adopted all but one of the clerk and master's findings. Contrary to the clerk and master's finding that the property should be sold as three separate tracts, the trial court determined that dividing the property into smaller tracts would increase the number of potential buyers.

The court agreed with the clerk and master that the character and topography of the property rendered a complete in kind division impossible; however, it determined that a partial partition in kind was possible as to the western half of Tract 2 (54.43 acres), the portion of the property that Ms. Sharp wanted. Based on the valuation given by one of the Plaintiffs' expert witnesses, the court valued the western half of Tract 2 at $3,600 per acre for a total value of $195,948. The court ruled that Ms. Sharp would receive her desired tract after transferring one-half of $195,948 to Plaintiffs, with each plaintiff receiving $48,987. The rest of the property would be sold, and the proceeds would be divided relative to each of the parties' interests.

Less than a month after making its ruling, the trial court held a hearing on Ms. Sharp's motion for summary judgment. Ms. Sharp argued that the trial court improperly delayed ruling on her motion. The trial court concluded:

> The order of reference was filed over a month before the motion was filed. In that order Chancellor Wallace stated that the petition seeks to sell for partition, "but not all facts sufficiently appearing", he referred the matter to a special commissioner to investigate on those facts and to report to the Court on the issues. Rule 56.06 of Tenn. R. Civ. P. allows a court considering a motion for summary judgment to permit supplemental proof. Certainly, where this Court ordered a special commissioner to investigate facts on behalf of the Court, the Court was within its right to delay a subsequent motion until the report was received.

The trial court then denied Ms. Sharp's motion for summary judgment, stating that there were material facts in dispute as to whether the property could be partitioned in kind. This dispute was primarily evidenced by the conflicting testimony at the hearing regarding the values of the various tracts. Ms. Sharp timely filed this appeal.

**ISSUES**

On appeal, Ms. Sharp presents the following four issues:

I.      Did the trial court err by delaying its ruling on Ms. Sharp's motion for summary judgment?

II.     Did the trial court err by ruling that each plaintiff held an undivided one-fourth interest?

III.    Did the plaintiffs prove by clear and convincing evidence that a partition in kind could not be accomplished?

IV.     Did the trial court err in its valuation of the western half of Tract 2?

Plaintiffs seek to recover damages under Tenn. Code Ann. § 27-1-122 for a frivolous appeal.

### STANDARD OF REVIEW

A concurrent finding of a master and chancellor is conclusive on appeal, except where it is upon an issue not properly referred, where it is based on an error of law or a mixed question of fact and law, or where it is not supported by any material evidence. Tenn. Code Ann. § 27-1-113 ("Where there has been a concurrent finding of the master and chancellor, which under principles not obtaining is binding on the appellate courts, the court of appeals shall not have the right to disturb such finding."); *Coates v. Thompson*, 713 S.W.2d 83, 84 (Tenn. Ct. App. 1986). This standard of review is similar to our standard when reviewing a jury verdict; we must affirm if there is any material evidence to support the trial court's concurrence. *Coates*, 713 S.W.2d at 84. This heightened standard of review only applies to findings that are made by both the special master and the chancery court. *See Manis v. Manis*, 49 S.W.3d 295, 301 (Tenn. Ct. App. 2001). Thus, the findings of fact made by the chancery court, but not by the special master, are not subject to the aforementioned standard of review.

When the findings of the special master and the trial court are not concurrent, the standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

I.    DELAYED RULING ON MOTION FOR SUMMARY JUDGMENT

Ms. Sharp contends that the trial court erred in failing to postpone the reference to the special master pending a ruling on her summary judgment motion. We have determined that the decision Ms. Sharp has challenged was a discretionary decision and we find no abuse of discretion.

Ms. Sharp contends that the material facts were undisputed when she filed her motion for summary judgment; however, the record reveals they were not. For example, just one month prior to filing her motion, Ms. Sharp entered into an order in which she agreed that the reference to a special master "was necessary to investigate the facts necessary to make a determination regarding the partition of the property." When her motion was filed, facts material to the disposition of her motion were still disputed or unknown. Pursuant to Tenn. R. Civ. P. 56.06, a trial court may allow time for "affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." Thus, it is within a trial court's discretion to delay ruling on a summary judgment motion to gather more facts. Therefore, we find no error with the trial court's determination that her motion for summary judgment was "premature in view of the fact that the Parties signed an Agreed Order of Reference to the Special Master prior to Defendant's Motion for Summary Judgment being filed and therefore the Motion for Summary Judgment is reserved and shall be held in abeyance. . . ."

When Ms. Sharp filed her motion for summary judgment, Plaintiffs' title to the property was in dispute. Specifically, it was disputed whether Plaintiffs jointly owned an undivided one-half interest in the property or whether each of them owned an undivided one-quarter interest in the property. In a partition action, "[t]he court cannot partition property nor sell it for partition and division of proceeds while the title is in dispute." *Campbell v. Lewisburg & N.R. Co.*, 26 S.W.2d 141, 145 (Tenn. 1930). Therefore, the trial court acted appropriately by delaying its ruling on the motion for summary judgment, because it could not rule on the partition petition until it resolved the issue of Plaintiffs' title to the property. *See id*.

As for the trial court's subsequent denial of Ms. Sharp's motion for summary judgment,

> this court is precluded from entertaining, as alleged error, the trial court's denial of a summary judgment motion (predicated upon the existence of a genuine issue of material fact) when the case proceeds to a trial on the merits and a judgment is subsequently rendered. We find it immaterial whether the summary judgment motion was made prior to or during the course of trial, so long as a judgment results after a trial on the merits.

*Cortez v. Alutech, Inc.*, 941 S.W.2d 891, 893-94 (Tenn. Ct. App. 1996).

In this case, the parties presented evidence during a hearing before the special master, and the trial court rendered a judgment based on a thorough review of that evidence. Accordingly, the judgment from which Ms. Sharp now complains resulted from a trial on the merits. As a consequence, we cannot entertain Ms. Sharp's claim that the trial court erred by postponing its ruling on her motion or by denying her motion for summary judgment.

For the foregoing reasons, we find no error on this issue.

## II. PLAINTIFFS' INTEREST IN THE SUBJECT PROPERTY

The trial court adopted the special clerk and master's finding that Ms. Sharp owned an undivided one-half interest in the property, and Plaintiffs each owned an undivided one-fourth interest. Ms. Sharp argues that Plaintiffs owned an undivided one-half interest, because Plaintiffs took their deceased mother's one-half share. On appeal, neither party disputes that the trust instrument is determinative of the parties' interests. Because the resolution of this issue hinges on the interpretation of a trust document, it is a question of law. Consequently, this concurrent finding by the special master and chancellor is not conclusive, and we review it de novo with no presumption of correctness accorded to the trial court.

We interpret a trust instrument in the same manner as a contract, deed, or will. *In re Estate of Marks*, 187 S.W.3d 21, 28 (Tenn. Ct. App. 2005). First and foremost, we must determine the intent of the settlor. *Id.* In making that determination, the plain meaning of the language in the trust instrument controls, and we do not look beyond the four corners of the instrument unless we determine that the language is ambiguous. *Brown v. Brown*, No. W2009-02264-COA-R3-CV, 2011 WL 441266, at *2 (Tenn. Ct. App. Feb. 9, 2011). The provision at issue here states:

> [T]he Trustee shall divide my Residuary Trust Estate into two equal shares. The Trustee shall distribute one share to my daughter Janice C. Sharp, free of trust; and shall distribute one-half share to my grandson Caleb Breen and one-half share to my grandson Travis Breen, free of trust.

This provision is clear and unambiguous. According to the above terms, the residuary trust estate is first divided in half. The trustee is to distribute one-half of the estate to Ms. Sharp, thus giving Ms. Sharp an undivided one-half interest. As to the remaining half, the trustee is to divide it into two equal parts, with one-half going to Travis Breen and the other half going to Caleb Breen. One-half of one-half is one-fourth. Thus, Ms. Crutcher clearly intended that Travis and Caleb Breen each own an undivided

one-fourth interest, irrespective of Ms. Sharp's argument that it was Ms. Crutcher's original intent to transfer a one-half interest in the property to Plaintiffs' mother.

### III. PARTITION

Ms. Sharp contends that all of the property should have been partitioned in kind because Plaintiffs did not prove by clear and convincing evidence that the property was so situated that a partition in kind could not be made. We have concluded that Plaintiffs carried their burden of proof based on the combined effect of the undisputed evidence that (1) the property is comprised of three noncontiguous tracts of significantly different acreage, shape, topography and value; and (2) some tracts currently have limited or restricted access to public roads, and partition in kind would result in some tracts having limited, if any, public access without ingress and egress easements.

Our statutory scheme provides that "any person having an estate for years in land, as a tenant in common with others, is entitled to partition either in kind or by sale." *Crawford v. Crawford*, No. E2002-00372-COA-R3-CV, 2002 WL 31528504, at *3 (Tenn. Ct. App. Nov. 14, 2002); *Nicely v. Nicely*, 293 S.W.2d 30, 32 (Tenn. Ct. App. 1956). Tennessee law favors a partition in kind over a partition by sale, and any party who seeks a partition by sale must prove by clear and convincing evidence that an equitable partition in kind is not feasible. *Crawford*, 2002 WL 31528504, at *3. Tenn. Code Ann. § 29-27-201 lists only two conditions under which a partition by sale is appropriate:

(1) If the premises are so situated that partition thereof cannot be made; or

(2) Where the premises are of such description that it would be manifestly for the advantage of the parties that the same should be sold instead of partitioned.

To prove that the second condition applies, the proponent of the partition by sale must show that the property "will bring more money when sold as a whole than the several shares would bring in the aggregate when sold separately to different purchasers, after a partition in kind." *Nicely*, 293 S.W.2d at 33.

If the party requesting a partition by sale cannot prove either of the circumstances listed in Tenn. Code Ann. § 29-27-201, then a partition in kind is required. *Crawford*, 2002 WL 31528504, at * 4. Nevertheless, a court need not order a partition in kind for the entire property. *Id*. Our courts have consistently held that when the proponent of a partition by sale does not meet his or her burden of proof, the court may order a *partial* partition in kind in lieu of an entire partition in kind. *Hale v. Hale*, M2010-00760-COA-R3-CV, 2011 WL 773440, at * 3-4 (Tenn. Ct. App. March 4, 2011); *See* Tenn. Code

Ann. § 29-27-104.[1] The manner of partition is discretionary. *Crawford*, 2002 WL 31528504, at *2.

Here, Ms. Sharp argues that Plaintiffs did not prove by clear and convincing evidence that one of the two circumstances in Tenn. Code Ann. § 29-27-201 existed. The trial court did not entirely disagree with Ms. Sharp. It determined that a partial partition in kind was appropriate for the western half of Tract 2 and awarded it to Ms. Sharp in kind, provided that Ms. Sharp pay half of the value of that portion of the tract to Plaintiffs. That determination, however, does not mean that the remaining property is so situated that partition in kind can be made.

The special master found no evidence that the parcels could be divided so as to provide all of the cotenants with an equal division based upon value. The master also found it significant that none of the proposed divisions by any party "take into consideration that the Plaintiff Travis Breen owns an undivided [one-fourth] interest in the real estate and that Plaintiff Caleb Breen owns an undivided [one-fourth] interest in the real estate." The special master went on to find that even a partial partition in kind of "[t]he real estate which is the subject of this litigation varies greatly in topography from some flat to rolling pasture land to deep hollows, making it virtually impossible to partition this property in kind so as to give each cotenant an equal share by value and acreage."

Although the trial court disagreed with the master's finding that there could be no partial partition in kind, it is significant that the trial court concurred with the finding that the topography of the remaining tracts made it virtually impossible to partition the remaining property in kind in accordance with the parties' relative interests. This is significant, because, as noted earlier, the concurrent finding of the master and chancellor on this fact is conclusive on appeal. *See Coates v. Thompson*, 713 S.W.2d at 84.

We have also determined that the combined effect of the evidence that (1) the property is comprised of three noncontiguous tracts of significantly different acreage, shape, topography and value; and (2) partition in kind would result in some tracts having limited, if any, public access without ingress and egress easements, clearly and convincingly proves that "the premises are so situated that partition [in kind] cannot be

---

[1] According to Tenn. Code Ann. § 29-27-104, a partial partition in kind will suffice. It states:

> [P]artition shall be made according to the respective rights of the parties, setting apart to such as desire it their shares in severalty, and leaving the shares of others, if desired, in common; and if there are minors, the court may, in its discretion, leave their shares in common, or set them apart to each in severalty, as may appear to be just, upon the proof introduced.

made." Tenn. Code Ann. § 29-27-201(1). Therefore, Plaintiffs established a statutory condition under which a partition by sale is appropriate. As a consequence, we affirm the trial court's determination that the western half of Tract 2 shall be divided in kind, and the remaining property shall be partitioned by sale.

## IV. VALUE OF PARCEL AWARDED IN KIND TO MS. SHARP

Ms. Sharp argues that the trial court erred in setting the per-acre value of the property awarded to her in kind, that being the western half of Tract 2, at $3,600 in the absence of "reliable evidence." We agree.

Three expert witnesses testified with regard to the value of the western half of Tract 2, the property awarded to Ms. Sharp.[2] The only witness who opined that the value was $3,600 per acre was James Settles who is an "accredited land consultant recognized by the National Association of Realtors" with 25 years of experience in real estate. Ms. Sharp objected to his testimony at the hearing on the grounds he was not qualified to testify as an expert.

Ms. Sharp insists that his opinion is not admissible and not reliable for several reasons. She contends he is "not legally qualified to give an appraisal of property" because he is not a licensed appraiser. She also relies on the fact that Mr. Settles had not inspected the property and had never been on the property. She also insists his opinion is unreliable because it was based upon topographical maps and the sale price of considerably smaller tracts.

We find it appropriate to first address Ms. Sharp's contention that James Settles was "not legally qualified to give an appraisal of property because he is not licensed." It is undisputed that Mr. Settles is not a licensed appraiser; therefore, we agree that Mr. Settles was not legally qualified to give an *appraisal* of property. *See* Tenn. Code Ann. § 62-39-103(a) ("[I]t is unlawful for anyone to solicit an appraisal assignment, or to prepare an appraisal or an appraisal report relating to real estate or real property in this state without first obtaining a real estate appraiser's license or certificate."). However, the fact that Mr. Settles could not *appraise* property does not automatically disqualify him from rendering an opinion as to the *value* of property. *See Bates v. Bates*, No. M2010-02590-COA-R3-CV, 2012 WL 2412447, at *8 (Tenn. Ct. App. June 26, 2012). In *Bates*, we held "that Tenn. Code Ann. § 62-39-103(a) does not prohibit a witness from testifying to the value of real property where such an opinion of value, rather than the appraised value

---

[2] Although an owner of property is competent to testify as to the value of his or her property, none of the parties testified as to the value of the property. *See Stinson v. Stinson*, 161 S.W.3d 438, 446 (Tenn. Ct. App. 2004) ("It is well settled under the law in this state that an owner of property is competent to testify as to the value of such property.").

of property as directed by Tenn. Code Ann. § 29-17-1004, is sought. . . .”[3] *Id.* Therefore, although Mr. Settles could not appraise the property at issue, the fact he was not a licensed appraiser did not render him incompetent to render an opinion as to the value of the property. *See id*.

When determining the admissibility of expert testimony, the role of the trial court is that of a gatekeeper. *State v. Scott*, 275 S.W.3d 395, 401 (Tenn. 2009). Questions pertaining to the qualifications, competency, admissibility and relevancy of expert testimony are left to the discretion of trial court. *Brown v. Crown Equipment Co.*, 181 S.W.3d 268, 273 (Tenn. 2005).

To be admissible, expert testimony must be relevant and it must satisfy Tennessee Rules of Evidence 702 and 703. Rule 702 states, “If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.” Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Based on the foregoing, it is the responsibility of the trial court to determine that “(1) the witness qualifies as an expert, and (2) the expert’s testimony is reliable in that the facts underlying the testimony are trustworthy and the testimony will substantially assist the trier of fact.” *Freeman v. Blue Ridge Paper Products, Inc.*, 229 S.W.3d 694, 707–08 (Tenn. Ct. App. 2007) (citing *Brown*, 181 S.W.3d at 274). “The objective of the trial court’s gatekeeping function is to ensure that ‘an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.’”

---

[3] Tenn. Code Ann. § 29-17-1004 states:

Notwithstanding any law to the contrary, in any condemnation proceeding in this state, an appraisal of the property must be obtained. The appraisal shall value the property considering its highest and best use, its use at the time of the taking, and any other uses to which the property is legally adaptable at the time of the taking. Any appraiser making an appraisal must possess the designation Member of the Appraisal Institute (MAI), or be an otherwise licensed and qualified appraiser under title 62, chapter 39.

*Brown*, 181 S.W.3d at 275 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

When making his final ruling on the value of the property, the trial court stated that the values for the western half of Tract 2, as stated by the three witnesses who expressed opinions during the hearing before the special master, ranged from $1,500 to $3,600. Relying upon the testimony of Mr. Settles, the court set the value of the tract at $3,600 an acre. We have concluded, however, that Mr. Settles' opinion of the value of the tract was not sufficiently competent to be admissible for several reasons. For one, Mr. Settles had not inspected the property. In fact, he admitted that he had never been on the property. Moreover, his opinion was solely based upon topographical maps and the sale prices of considerably smaller tracts, which, he admitted, sometimes sell for more per acre than larger tracts. For these reasons, Mr. Settles' opinion of the value of the 54-acre tract awarded to Ms. Sharp, in kind, should not have been considered.

The other witnesses who expressed opinions as to the value of the western half of Tract 2, were Ms. Sharp's witness, William Flowers, and Plaintiffs' witness, Teresa Howell. Mr. Flowers, who is a licensed real estate appraiser, testified that Tract 2, as a whole, was worth $2,100 per acre. When questioned about the value of the western half of Tract 2, Mr. Flowers stated that he did not know its specific value; however, he testified that the western half of Tract 2, by itself, was more valuable than the eastern half:

> Q. So your appraisal of one tract would have raised one up and lowered the other one if you appraised them separately?
> A. That's probably right.
> Q. Okay. So those two are in no way the same value?
> A. That's right.

Significantly, however, Mr. Flowers testified that unless he updated his appraisal, he could not testify to the value of the property as of the time of the hearing. Consequently, the trial court did not consider Mr. Flowers' opinion because, as the court stated, Mr. Flowers' "appraisal reports were over three (3) years old, and could have been, but were not updated to reflect current values." We agree with this decision.

The only other witness to render an opinion concerning the value of the western half of Tract 2 was Teresa Howell who is a licensed real estate broker. She testified that she would list it for $2,500 per acre based on her research of recent, comparable sales in the same area and no objections were raised to challenge her testimony.

A court, in its discretion, is free to place a value on an asset that is within the range of the evidence submitted. *See Owens v. Owens*, 241 S.W.3d 478, 487 (Tenn. Ct. App. 2007); s*ee also Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). The

only competent evidence in the record concerning the value of the tract awarded to Ms. Sharp is that it is worth $2,500 per acre.[4] Therefore, we modify the trial court's ruling on this issue and remand with instructions for the trial court to set the value of the property awarded to Ms. Sharp, in kind, at $2,500 per acre.

## V.    FRIVOLOUS APPEAL

Plaintiffs seek to recover damages for expenses incurred as a result of this appeal pursuant to Tenn. Code Ann. § 27-1-122. They contend that the appeal is devoid of merit and thus frivolous. We disagree. Clearly, this appeal was not frivolous as the appellant, Ms. Sharp, prevailed on one of her issues.

## IN CONCLUSION

We affirm the trial court in all respects except for the value assigned to the parcel awarded to Ms. Sharp in kind, and remand with instructions for the trial court to modify the judgment in that respect and for such other proceedings as may be necessary to carry out the trial court's rulings, as modified herein.

One-half of the costs of appeal are assessed against the appellant and one-half against appellees.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[4] It is the responsibility of the parties to provide the court with evidence of the present value of property. *See Owens v. Owens*, 241 S.W.3d 478, 487 (Tenn. Ct. App. 2007). Not only is the burden on the parties to produce competent evidence of value, the parties are bound by the evidence they present. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987) (citations omitted). As was the case in *Nicholson v. Nicholson*, No. M2010-00042-COA-R3-CV, 2010 WL 4065605, at *6 (Tenn. Ct. App. Oct. 15, 2010), the parties to this appeal submitted little credible evidence as to the value of the property.